IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA KASTANIDIS,**<br>     Plaintiff;<br><br>v.<br><br>**COMMONWEALTH OF PENNSYLVANIA, DEPT. OF HUMAN SERVICES,**<br>     Defendant | **Case No.**<br><br>Jury Trial Demanded<br><br>Filed Electronically |

## COMPLAINT

AND NOW comes Plaintiff, Christina Kastanidis, by and through her undersigned attorneys at Strokoff & Cowden, P.C., and hereby brings this action against the Defendant, Commonwealth of Pennsylvania, Department of Human Services, alleging in support thereof as follows:

### PARTIES

1.  The Plaintiff, Christina Kastanidis, is an adult individual who resides at 2032 Foxwood Drive, Columbia, Lancaster County, Pennsylvania 17512.

2.  Defendant, Pennsylvania Department of Human Services (hereinafter "DHS"), is a public agency existing under the laws of the Commonwealth of Pennsylvania within this District, has numerous places of business in this judicial district, including one

1

at 832 Manor Street, Lancaster County, Lancaster, Pennsylvania 17604. The Department of Human Services is the successor name for the Department of the Commonwealth of Pennsylvania previously known as the Department of Public Welfare (hereafter DPW).[1] At all times relevant to this Complaint, the Department of Public Welfare operated, supervised, managed and ran the Bureau of Juvenile Justice Services.

   3. Defendant DHS, is and was an employer within the Commonwealth of Pennsylvania and within the jurisdictional coverage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e. The Bureau of Juvenile Justice Services is and was a major component of DHS/DPW, and at all times relevant to this Complaint was responsible for, among other things, the management and operations of facilities for the treatment, care and custody of male and female adolescents adjudicated delinquent.

---

[1] At the time this cause of action arose, the Defendant was operating as the Department of Public Welfare. On November 2014, its name was changed from the Department of Public Welfare to the Department of Human Services.

2

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 2000e et seq. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(1), (3) and (4) and the aforementioned statutory provisions.

5. Venue is invoked pursuant to 28 U.S.C. § 1391(b), and 28 U.S.C. §118(a), because the Plaintiff resides in the Eastern District and because Defendant has numerous places of business located in this judicial district.

## CONDITIONS PRECEDENT TO SUIT

6. On or about October 10, 2012, Ms. Kastanidis filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC") Charge No: 530-2013-00232.

7. Ms. Kastanidis exhausted her administrative remedies having received Notice of Right to Sue from the EEOC on December 1, 2015.

## STATEMENT OF FACTS

8. The Plaintiff became an employee of the Commonwealth of Pennsylvania in 2003 and at all times relevant to

this Complaint, she was a Pennsylvania civil servant covered by the Pennsylvania State Civil Service Act.

9. In late 2011, the Plaintiff applied for a promotion to the Civil Service position of Administrative Assistant to the Director of the Bureau of Juvenile Justice Services within the DPW. Plaintiff was interviewed for the position by a panel of DPW employees, which included the Director of the Bureau of Juvenile Justice Services (hereafter Bureau Director). She was appointed to the position effective February 13, 2012.

10. By Plaintiff's second day of employment, February 14, 2012, and continuing on almost a daily basis thereafter, she heard numerous individuals throughout her workplace, including the Bureau Director, make frequent sexual anti-female remarks and telling jokes of a sexual and sexist nature. It was common to hear the Bureau Director to comment about women's breasts.

11. The Bureau Director provided the Plaintiff with free parking and then he told her that she could have anything she wanted because the Plaintiff was "my girl." The Bureau Director frequently requested that the Plaintiff join him for lunch, which requests Plaintiff generally refused.

4

12. The Bureau Director frequently hovered over the Plaintiff, invading her personal space, and would frequently approach her when she was engaged in a conversation with another male employee and interrupted same.

13. On or about February 21, 2012, the Bureau Director directed Plaintiff to attend a statewide Bureau Manager's Meeting in Danville, Pennsylvania, on March 7, 8, and 9, 2012. He informed her that they would travel together to the meeting.

14. While the Plaintiff originally believed that other employees of the Bureau would be travelling to this meeting with them, when she showed up on the morning of March 7, 2012, she found out that she would be traveling alone with the Bureau Director in a state vehicle.

15. On the drive to Danville, among other things, the Bureau Director talked about female strippers in a gentlemen's club they passed by on the highway, told the Plaintiff she was a very attractive woman and also told the Plaintiff about the after-work hours partying, drinking and sexual activity that might follow Bureau business meetings, and told her that "people do sleep with their bosses."

16. The Bureau Director's comments made the Plaintiff feel so uneasy that she felt that he might actually sexually assault her during the car ride. She even contemplated jumping from the moving car at one point.

17. Just before the meeting was to begin on March 7, 2012, the Bureau Director introduced the Plaintiff to a Director of Maintenance who was being feted at a retirement dinner that night as follows: "Speaking of naked women, Christina, come here, I wanted to introduce you to -".

18. Also on the first day of the conference, Plaintiff overheard a conversation between the Bureau Director; the Director of the North Central Secure Treatment ("NCST") (entrusted with the treatment, care and security of high risk female adolescents); and a manager of the NCST Unit, in which the Bureau Director stated, "we don't pay the girls [in the Treatment Unit] to have sex with us, we have sex with them for free."

19. The Bureau Director directed the Plaintiff to attend the retirement dinner being held the night of March 7, 2012, for the Director of Maintenance, an individual whom she had never met until earlier that day.

20. The Plaintiff went to the retirement dinner as directed. Following the formal part of the retirement dinner, a Bureau Manager waved to Plaintiff, beckoning her to come into the bar area to join a conversation with the Bureau Director and the Deputy Secretary of the Department of Public Welfare. The Bureau Director introduced Plaintiff to the Deputy Secretary, who made a crude statement in a very loud voice implying the Bureau Director hired Plaintiff for his own sexual purposes and then proceeded to make a negative comment about the Bureau Director's genitalia. Other individuals were also present in the bar area and are believed to have heard this exclamation, including the Human Resources Director. The Plaintiff excused herself from the bar area, and returned to the hotel where she was staying.

21. At the conclusion of the meetings on March 8, 2012, the Bureau Director told the Plaintiff what room he was staying in at the hotel, invited her to his room for drinks, and told her that he would leave the door to his room cracked for her to enter. The Plaintiff declined this invitation, stating that she was going to be going out for dinner with some other employees. Before she left to

go out to dinner, the Bureau Director asked that she bring some food back to his hotel room after she returned from dinner.

22. After dinner on the night of March 8, 2012, the Plaintiff did bring back some food, and accompanied by another female colleague, delivered same to the Bureau Director's hotel room. Upon entering the Bureau Director's hotel room, Plaintiff saw a number of other senior Bureau managers, including the Human Resources Director, drinking alcoholic beverages. During the short time that the Plaintiff was in the Bureau Director's hotel room, the Bureau Director mouthed the word "bitch" to her, and commented to a subordinate Bureau female employee that he heard that she had "the most perfect breasts." Another male present said something about it being time to begin taking off clothes. The Plaintiff promptly left the room.

23. The Plaintiff was so anxious and afraid of being sexually assaulted by the Bureau Director that she made a plan to avoid riding back to the office from the conference with the Bureau Director. Instead, she rode back to the office with another employee.

24. The foregoing incidents, many of which occurred not only in the presence of senior managers of the Bureau but in the presence of the Human Resources Director and a Deputy Secretary of DPW, led the Plaintiff to conclude that the Bureau and the Department was permeated with discriminatory intimidation, sexual hostility, and misogynistic culture so pervasive, that it would be futile to register any complaints with DPW while she was still employed there.

25. Almost immediately upon returning to her office on the afternoon of March 9, 2012, the Plaintiff sent an email to the Bureau Director, with a copy to her former boss and to the Human Resources Director to inform them that she was exercising her Civil Service right to return to her former position in an another Department.

26. The Bureau Director's actions alleged above, occurred while he was acting within the scope of his employment as a Bureau Director and agent of the Defendant. Many of such actions occurred with the awareness and acquiescence and under the supervisory control of the Deputy Secretary of the Department

of DPW, and many other senior managers of the Bureau of Juvenile Justice Services.

27. The Plaintiff was subjected to sexual harassment and a sexually hostile, offensive and anti-female work environment created by Defendant.

28. The terms and conditions of Plaintiff's employment were unreasonably affected by Defendant's above-described action and inaction.

29. The Defendant's sexually discriminatory conduct and inaction created a work environment extremely detrimental to Plaintiff's emotional and physical health, interfered with Plaintiff's work performance and caused Plaintiff acute emotional distress, necessitating treatment and consequent expenses.

30. As a result of the foregoing activity, the Plaintiff became anxious, nervous, depressed, humiliated, had difficulty sleeping and eating and lost 45 pounds from the date of her initial employment with DPW and for several months thereafter. As a result of the anxiety, nervousness and depression the Plaintiff sought counseling which was not successful.

31. Plaintiff's anxiety and depression continued to the point where she became unable to continue to work for the Commonwealth, and was constrained to leave her position with the Commonwealth in an effort to restore her mental and emotional health.

32. The acts, failures to act, practices and policies of Defendant as alleged above constitute sexual harassment of Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2.

33. The acts, failure to act, practices and policies of Defendant set forth above constitute intentional discrimination on the basis of Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2.

34. The acts, failures to act, practices and policies of Defendant set forth above constitute a constructive discharge of Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2.

WHEREFORE, the Plaintiff demands jury trial and demands judgment in favor of Plaintiff and against Defendants for the following relief:

a) Actual damages against Defendants in excess of $50,000 to be established at trial, with interest;

b) Compensatory damages for future pecuniary losses, emotional pain, suffering, distress and mental anguish;

c) Punitive damages;

d) Attorneys' fees; and

e) Such other and further relief as the Court may deem just, proper and equitable.

Respectfully submitted,

**STROKOFF & COWDEN, P.C.**

DATE: 2/12/16

By: /s/ Elliot A. Strokoff
Elliot A. Strokoff, Esq.
I.D. No. 16677
132 State Street
Harrisburg, PA 17101
(717) 233-5353

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA KASTANIDIS,**<br>Plaintiff;<br><br>v.<br><br>**COMMONWEALTH OF PENNSYLVANIA, DEPT. OF HUMAN SERVICES,**<br>Defendant | **Case No.**<br><br>Jury Trial Demanded<br><br>Filed Electronically |

### VERIFICATION

I, **Christina Kastanidis**, certify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

*/s/ Christina Kastanidis*
Christina Kastanidis

DATE: 2/12/16

12